# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| JERRY W. JONES,<br>Plaintiff<br><br>v.<br><br>JULIAN CASTRO,<br>Defendant | Civil Action No. 15-310 (CKK) |

## MEMORANDUM OPINION and ORDER
(February 29, 2016)

Plaintiff Jerry Jones is an employee of the United States Department of Housing and Urban Development ("HUD") and was formerly the Director of Alternative Dispute Resolution in the Office of Departmental Equal Employment Opportunity at HUD. He is an African-American man. In this case under Title VII of the Civil Rights Act of 1964, as amended, he claims that the agency discriminated against him on the basis of his race, his gender, and on the basis of the combination of his race and gender; he also claims that he agency retaliated against him as a result of his engaging in protected equal employment opportunity ("EEO") activities. Presently before this Court is Defendant's [10] Motion for Judgment on the Pleadings.[1] Defendant argues that several of the purported bases for Plaintiff's claims are not adverse actions that can serve as the basis for a discrimination or retaliation claim; that Plaintiff did not properly exhaust his administrative remedies in full with respect to all claims; and that, with respect to the remaining claims, the Complaint fails to state a claim upon which relief may be granted.

---

[1] The motion is styled as a "Motion for Judgment on the Pleadings and, Alternatively, for Summary Judgment." As described further below, the Court denied without prejudice Defendant's motion for summary judgment in light of Plaintiff's request for discovery. The Court resolves only the motion for judgment on the pleadings today.

1

Upon consideration of the pleadings,[2] the relevant legal authorities, and the record for purposes of this motion, the Court GRANTS IN PART and DENIES IN PART Defendant's motion, for the reasons stated below. The Court grants the motion with respect to the retaliation claim and dismisses that claim. The Court also grants the motion with respect to the discrimination claims insofar as they are based on adverse actions *other than* Plaintiff's five-day suspension and reassignment. The Court otherwise denies the motion.

## I. BACKGROUND

### A.  Statutory and Regulatory Background

As Plaintiff brings claims under both the antidiscrimination and the antiretaliation provisions of Title VII, the Court reviews the law applicable to claims under each provision.

Title VII of the Civil Rights Act makes it unlawful for any employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "This statutory text establishes two elements for an employment discrimination case: (i) the plaintiff suffered an adverse employment action (ii) because of the employee's race, color, religion, sex,

---

[2] The Court's consideration has focused on the following documents:

- Pl.'s Complaint ("Compl."), ECF No. 1;
- Defs.' Motion for Judgment on the Pleadings and, Alternatively, for Summary Judgment ("Defs.' Mot."), ECF No. 10;
- Pl.'s Mem. of Points and Auth. in Support of Pl.'s Opposition to Def.'s Motion for Judgment on the Pleadings ("Pl.'s Opp'n"), ECF No. 19; and
- Defs.' Reply in Support of Def.'s Motion for Judgment on the Pleadings ("Defs.' Reply"), ECF No. 20.

In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

or national origin." *Brady v. Office of Sergeant at Arms*, 520 F.3d 490, 493 (D.C. Cir. 2008). An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas v. Donovan,* 559 F.3d 549, 552 (D.C. Cir. 2009); *see also Aliotta v. Bair*, 614 F.3d 556, 566 (D.C. Cir. 2010).

"Title VII's antiretaliation provision forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.' " *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e–3(a)). "To prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath v. Clinton*, 666 F.3d 1377, 1380 (D.C. Cir. 2012); *accord Bridgeforth v. Jewell*, 721 F.3d 661, 663 (D.C. Cir. 2013). "Materially adverse action would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.' " *Id.* (quoting *Burlington N.,* 548 U.S. at 68). "To be materially adverse, the employer's action must be more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.' " *Id.* (quoting *Burlington N.,* 548 U.S. at 68).

Before filing a claim for discrimination or retaliation under Title VII, an individual must "must seek administrative adjudication of the claim." *Scott v. Johanns*, 409 F.3d 466, 468 (D.C. Cir. 2005); *see also Hamilton v. Geithner*, 666 F.3d 1344, 1349 (D.C. Cir. 2012) (exhaustion required for retaliation claim under Title VII). The D.C. Circuit Court of Appeals has summarized the process as follows:

> Under regulations promulgated by the Equal Employment Opportunity Commission (EEOC) pursuant to Title VII, the employee must do so by filing a complaint with her agency. 29 C.F.R. § 1614.106(a). The employing agency then conducts an investigation and, if the employee so requests, refers the matter to an EEOC administrative judge for a hearing. *Id.* §§ 1614.106(e)(2), 1614.108–09. After the employing agency investigates, or the administrative judge issues a decision, the employing agency must take "final action." *Id.* § 1614.110. If the employee never requests a hearing, the agency's final action must "consist of findings ... on the merits of each issue ... and, when discrimination is found, appropriate remedies and relief." *Id.* § 1614.110(b). If the employee requests a hearing, the employing agency's "final order shall notify the complainant whether or not the agency will fully implement the administrative judge's decision." *Id.* § 1614.110(a). An employee who is aggrieved by the agency's final disposition of her complaint may then either appeal to the EEOC or file suit in federal court pursuant to 42 U.S.C. § 2000e–16(c). *Id.* § 1614.110.

*Payne v. Salazar*, 619 F.3d 56, 58 (D.C. Cir. 2010). "A Title VII lawsuit following the EEOC charge is limited in scope to claims that are 'like or reasonably related to the allegations of the charge and growing out of such allegations.' " *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (quoting *Cheek v. Western and Southern Life Ins. Co.,* 31 F.3d 497, 500 (7th Cir. 1994)).

## B.  Factual Background

The Court provides an overview of the factual background of this case, reserving additional presentation of the facts for the issues discussed below. For the purposes of the motion before the Court, the Court accepts as true the well-pleaded allegations in Plaintiff's Complaint. The Court does "not accept as true, however, the plaintiff's legal conclusions or inferences that are unsupported by the facts alleged." *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 315 (D.C. Cir. 2014).

Plaintiff Jones began his service as the director of the Alternative Dispute Resolution ("ADR") program of HUD in February 2005. Compl. ¶ 19. On June 10 or 11, 2010, a HUD employee informed Michelle Cottom, then the deputy director of the Office of Departmental Equal Employment Opportunity ("ODEEO") at HUD, that Jones had raped her in July 2009. *Id.*

¶ 42. (Plaintiff disputes that allegation. *Id.*) That alleged incident occurred before that employee

joined HUD as an employee. *See id.* ¶ 39.

On June 16, 2010, Cottom placed Jones on paid administrative leave prior to being given

notice of the charges against him. *Id.* ¶ 50. He was immediately escorted out of the HUD facility.

*Id.* He was initially placed on paid administrative leave for a period of two weeks, and at that

time, Cottom and/or other senior management officials asked HUD's Office of Inspector General

to investigate him. *Id.* ¶ 51. Jones' paid administrative leave was renewed periodically through

January 24, 2012. *Id.* ¶ 52.

Jones was interviewed by Office of Inspector General investigators on August 26, 2010.

*Id.* ¶ 54. Jones responded orally to the wide ranging questions posed to him. *Id.* Cottom proposed

to terminate Jones' employment with HUD in a written notice dated January 6, 2011. The notice

charged Jones with several instances of misconduct; those instances did not include the original

allegation of rape. *Id.* ¶¶ 55-56. The charges included claims that Jones had acted inappropriately

to four other women (including harassment) and that he lacked candor in denying those

allegations to the Office of Inspector General. *Id.* ¶¶ 63, 68. On January 31, 2011, Jones filed his

written reply to the notice of proposed removal. *Id.* ¶ 58. In his written reply, in addition to

denying the allegations that were the basis of the charges in the notice of proposed removal,

Plaintiff argued that he was a victim of disparate treatment in light of the charges against him and

the inadequate investigation conducted. *Id.* ¶ 66. Plaintiff subsequently supplemented his written

reply on February 4 and February 15, 2011. *Id.* n.1.

On March 29, 2011, Jones replied to HUD's charges orally for the first time. *Id.* ¶ 67. The

meeting was attended by Dan Lurie, the deciding official and a special assistant to the deputy

secretary of HUD, and by George Corsoro, the official representative of HUD's responsible

employee and labor relations division. *Id.* No later than June 2011, Lurie concluded that the charges against Jones would not be sustained and that he would not be removed from federal service. *Id.* ¶ 69. However, Jones was not yet returned to active duty. *Id.* ¶ 71. On October 3, 2011, HUD informed Jones that it had appointed a new deciding official, Patricia Hoban-Moore, who was at that time the Director of HUD Field Policy and Management. *Id.* ¶ 72. On October 11, 2011, Jones appeared before Hoban-Moore for a second oral reply. *Id.* ¶ 73. No later than November 2011, Hoban-Moore determined that Jones was to be restored to active duty and reinstated in a suitable position. *Id.* ¶ 74. Plaintiff then alleges that, instead of issuing Hoban-Moore's decision, HUD encouraged Plaintiff to retire or resign to avoid being terminated. *Id.* ¶ 76. Plaintiff was then given false and misleading information regarding retirement by a HUD representative in the Human Resources Department. *Id.* ¶¶ 77-79.

HUD then issued Hoban-Moore's decision, which was dated January 24, 2012, which rejected the proposal to remove Jones and instead suspended him for five days. *Id.* ¶ 82. Hoban-Moore dismissed five of the seven charges against Jones and sustained two of the charges. *Id.* ¶¶ 83-84. Plaintiff maintains that the two sustained charges were improperly sustained. *Id.* ¶ 84. Hoban-Moore's decision advised Jones that he was being reassigned from his former position as director of the ODEEO ADR program into a separate HUD division. *Id.* ¶ 86. On February 13, 2012, the date Jones was to return to active duty, HUD did not inform Jones where he was to report for work, and he remained in the lobby of a HUD building for over two hours because he could not access the building. *Id.* ¶ 88. Jones was then assigned to a non-supervisory position with fewer and less important responsibilities and fewer opportunities for advancement; the position was also outside of his career field. *Id.* ¶ 89.

**C.  Procedural Background**

Jones initiated the informal EEO complaint process no later than March 8, 2012. *Id.* ¶ 90.

On or before May 18, 2012, Jones filed his formal EEO complaint. *Id.* More than 180 days had

elapsed after the filing of the formal complaint without the issuance of a final agency decision by

HUD. *Id.*

Subsequently, Plaintiff filed this action on March 3, 2015. Plaintiff identifies the

following actions as the bases for his discrimination claims and his retaliation claim:

- "on January 24, 2012, defendant suspended plaintiff for five days without pay, removed plaintiff from his position as Director of ADR in HUD ODEEO, and reassigned plaintiff to a nonsupervisory position with significantly reduced duties, professional exposure to senior officials of HUD, and opportunity for professional advancement";

- "in June of 2011, failed to dismiss the notice proposing to terminate plaintiff's employment and restore plaintiff to active duty in the position of Director of ADR in ODEEO";

- "beginning on June 16, 2010, placed plaintiff on administrative leave and under investigation, which caused plaintiff to lose performance bonuses and to be denied annual leave for FY 2010 and FY 2011 that he would have accrued and received but for defendant's unlawful actions"; and

- "stigmatized plaintiff and caused great harm in his personal life and to his professional reputation and ended any chance for career advancement."

*Id.* ¶ 94 (discrimination on the basis of race plus sex); *see id.* ¶ 101 (same actions as bases for sex

discrimination claim); *id.* ¶ 117 (same actions as bases for retaliation claim).[3]

After granting Defendant an extension to respond to the complaint, the Court then

granted the parties' joint request to set a brief briefing schedule prior to any discovery. Pursuant

to that schedule, Defendant then filed its [10] Motion for Judgment on the Pleadings and,

---

[3] The Court notes that, somewhat inexplicably, Plaintiff only lists the first *two* sets of actions as the adverse employment actions that are the basis for his race discrimination claim. *See id.* ¶ 108. But that distinction is of no consequence given the Court's conclusions below.

Alternatively, for Summary Judgment. In response, Plaintiff filed a Motion for Continuance to Take Discovery, ECF No. 16-17, in which Plaintiff sought to take discovery before responding to Defendant's motion. The Court concluded that, given that the parties had jointly requested a briefing schedule that did not include a period for discovery, the Court would resolve the motion for judgment on the pleadings, once it was fully briefed, before allowing discovery. However, the Court also determined that it would allow discovery prior to resolving a motion for summary judgment—assuming that claims remain in this action. Therefore, the Court denied without prejudice Defendant's [10] Motion for Summary Judgment, and the Court extended the deadlines for the remainder of the briefing on Defendant's Motion for Judgment on the Pleadings. That motion is now fully briefed and ripe for resolution.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." The standard for reviewing a motion for judgment on the pleadings is "virtually identical" to that applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6). *Baumann v. District of Columbia,* 744 F. Supp. 2d 216, 221 (D.D.C. 2010). Because a Rule 12(c) motion "would summarily extinguish litigation at the threshold and foreclose the opportunity for discovery and factual presentation," the district court must approach such motions "with the greatest of care" and deny them "if there are allegations in the complaint which, if proved, would provide a basis for recovery." *Haynesworth v. Miller,* 820 F.2d 1245, 1254 (D.C. Cir. 1987), *abrogated on other grounds by Hartman v. Moore,* 547 U.S. 250 (2006). "The court is limited to considering the facts alleged in the complaint, any documents attached to or incorporated in the complaint,

matters of which the court may take judicial notice, and matters of public record." *Baumann*, 744 F. Supp. 2d at 222.

Under rule 12(c)—as under rule 12(b)(6)—a party may move to dismiss a complaint on the grounds that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "[A] complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Rather, a complaint must contain sufficient factual allegations that, if accepted as true, "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## III. DISCUSSION

Defendant argues that (1) the purported bases for Plaintiff's claims do not qualify as adverse actions under the applicable standards for discrimination and retaliation claims; (2) Plaintiff did not timely exhaust his administrative remedies with respect to all of his claims; and (3) the Complaint fails to state a plausible claim with respect to the claims that were based on qualifying adverse actions and were properly exhausted. The Court addresses, in turn, these arguments.

### A.  Adverse Actions

Defendant argues that several of the actions on which Plaintiff bases his discrimination and retaliation claims do not qualify as adverse actions that can serve as the bases of those claims. Specifically, the agency argues that none of the actions *other than* Plaintiff's five-day suspension and reassignment are adverse actions that can serve as the basis for cognizable

Case 1:15-cv-00310-CKK   Document 21   Filed 02/29/16   Page 10 of 26


discrimination and retaliation claims. In response, Plaintiff argues (1) that the standard for adverse actions is different under the discrimination and the retaliation provisions of Title VII; (2) that the actions should be considered as a whole rather than discretely; and (3) that each of the disputed actions is a qualifying adverse action under both the discrimination and retaliation provisions of Title VII. The Court first addresses the prefatory legal questions: the appropriate standard to apply under the discrimination and retaliation provisions and whether the actions should be addressed discretely or collectively.

Turning to the standards to apply, the Court agrees with Plaintiff that the standards are not identical for adverse actions with respect to retaliation and discrimination claims. *See Burlington N.*, 548 U.S. at 67 ("For these reasons, we conclude that Title VII's substantive provision and its antiretaliation provision are not coterminous. The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm."). The Court, therefore, applies the standards appropriate for each type of claim, which were introduced in the legal overview above. The discrimination claims must rest on an adverse employment action, which is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits." *Douglas,* 559 F.3d at 552. "For employment actions that do not obviously result in a significant change in employment status—such as giving a poor performance evaluation, reassigning office space and equipment, or, for that matter, fielding a company softball team—an employee must go the further step of demonstrating how the decision nonetheless caused such an objectively tangible harm." *Id.* at 553. By contrast, the retaliation claim must rest on "a materially adverse action." *Bridgeforth*, 721 F.3d at 663. "Materially adverse action would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.' " *Id.*

(quoting *Burlington N.,* 548 U.S. at 68). Furthermore, "[t]o be materially adverse, the employer's action must be more than 'those petty slights or minor annoyances that often take place at work and that all employees experience.' " *Id.* (quoting *Burlington N.,* 548 U.S. at 68).

With respect to Plaintiff's claim that the putative adverse actions should be considered as "a whole" rather than individually, Pl.'s Opp'n at 25, the Court notes that Plaintiff cites to no legal authority for that proposition. In addition, that claim is at odds with the well-established framework for analyzing adverse actions with respect to discrimination claims. *See Douglas*, 559 F.3d at 551-54 (analysis of discrimination claims with respect to individual alleged adverse actions). With respect to retaliation claims, it is appropriate to analyze adverse actions under the same framework—action by action. *See Burlington N.*, 548 U.S. at 68 (referring to a single "challenged action" as the unit of analysis for retaliation claims); *Singletary v. D.C.*, 351 F.3d 519, 526 (D.C. Cir. 2003) (citing *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002)) (distinguishing between the "discrete acts" that are the basis for a discrimination or retaliation claim and the series of separate acts that, together, are actionable under a hostile work environment claim). In sum, because the only claims before the court are discrimination and retaliation claims—not a hostile work environment claim—the Court must analyze *each* alleged adverse action, individually, to determine whether it constitutes an action that may be the basis for a discrimination claim or a retaliation claim in the circumstances of this case.

The Court now turns to those individual actions that Plaintiff maintains are adverse actions. Defendant argues that the following actions do not constitute adverse actions with respect to Plaintiff's discrimination or retaliation claims: Plaintiff's placement on administrative leave; Plaintiff's placement under investigation; Plaintiff's purported loss of annual leave; Plaintiff's purported loss of performance bonuses; the purported stigmatizing of Plaintiff, harm

to his personal life, and loss of career advancement chances; and the failure to dismiss the notice of proposed removal pursuant to Plaintiff's preferred schedule. *See* Compl. ¶¶ 94, 101, 117; *see also id.* ¶ 108 (basis for race discrimination claim limited to suspension/reassignment and failure to dismiss notice). In other words, Defendant challenges all of the adverse actions that are the bases for Plaintiff's claims *other than* the five-day suspension and his reassignment. The Court analyzes each of these actions in light of the respective standards for discrimination and retaliation claims.

### 1. Placement on administrative leave

Plaintiff was placed on paid administrative leave on June 16, 2010, and at the same time, HUD officials requested an investigation by HUD's Office of Inspector General. Compl. ¶¶ 50-51. The initial period of administrative leave was two weeks, and that period of leave was renewed periodically—sometimes at week intervals—through January 24, 2012. *Id.* ¶¶ 51-52. The Court agrees with Defendant that the placement on paid administrative leave does not itself constitute an adverse action under either the discrimination standard or the retaliation standard.

With respect to Plaintiff's discrimination claims, the Court concludes that a 19 month period of paid administrative leave while an investigation is ongoing—an initial two-week period followed by periodic extensions—does not, by itself, constitute an adverse action. *See Bland v. Johnson*, 66 F. Supp. 3d 69, 73 (D.D.C. 2014) ("being placed on paid administrative leave is not an adverse employment action sufficient to allege a Title VII discrimination claim"); *Brown v. Georgetown Univ. Hosp. Medstar Health*, 828 F. Supp. 2d 1, 9 (D.D.C. 2011); *Dickerson v. SecTek, Inc.*, 238 F. Supp. 2d 66, 79 (D.D.C. 2002) (concluding that suspension did not constitute adverse action where employee was fully compensated and where suspension itself did not cause subsequent adverse actions). Notably, while Plaintiff emphasizes that, in several cases relied on

by Defendant, the period of administrative leave was markedly shorter than the period in this case, Plaintiff points to no cases where the length of a period of *paid* administrative leave was sufficient for the period to constitute an adverse action. Ultimately, because Plaintiff was paid throughout the period of administrative leave, he cannot show the "objectively tangible harm" as a result of the administrative leave itself—separate from the other purported adverse actions, which the Court considers below—that is necessary to prevail on a claim for discrimination. *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999); *see also Boykin v. England*, No. CIV.A. 02-950 (JDB), 2003 WL 21788953, at *4 n.5 (D.D.C. July 16, 2003).

With respect to the retaliation claim, the timing of the alleged protected activity and the alleged adverse action is critical. Plaintiff alleges that he was subject to retaliation when he was, "beginning on June 16, 2010, placed plaintiff on administrative leave and under investigation, which caused plaintiff to lose performance bonuses and to be denied annual leave for FY 2010 and FY 2011 that he would have accrued and received but for defendant's unlawful actions." Compl. ¶ 117. The beginning of the period of administrative leave and investigation—as well as the purported resultant effects with respect to bonuses and annual leave—occurred before any of the alleged protected activity, which occurred on January 31, 2011, March 29, 2011, and October 11, 2011. *Id.* ¶¶ 114-16. The initiation of the period of administrative leave cannot be retaliation for the protected activity because it occurred *prior to* that activity. Moreover, Plaintiff never alleges that the period of administrative leave or of the investigation was extended or elongated as retaliation for his protected activity. Accordingly, the Court concludes that the period of paid administrative leave is not an adverse action with respect to Plaintiff's discrimination or retaliation claims.

### 2.  Placement under investigation

The Court now turns to the related claim that HUD placing Plaintiff under investigation for the period from June 16, 2010, to January 24, 2012, was itself an adverse action. The Court once again agrees with Defendant that the workplace investigation does not constitute an adverse action under the discrimination or retaliation provisions of Title VII.

With respect to the discrimination claims, "the 'mere initiation' of an investigation may not constitute a materially adverse action." *King v. Holder*, 77 F. Supp. 3d 146, 151 (D.D.C. 2015) (citing *Ware v. Billington*, 344 F. Supp. 2d 63, 76 (D.D.C. 2004)). Plaintiff does not allege that the placement under an investigation caused him to lose opportunities for promotions or otherwise reduce his regular salary. Moreover, "[p]urely subjective perceptions of stigma or loss of reputation are insufficient to make an employer's action 'materially adverse.' " *Brown v. Mills*, 674 F. Supp. 2d 182, 191 (D.D.C. 2009) (citation and internal quotation marks omitted). Without identifying any tangible harm that resulted from the investigation, Plaintiff's placement under investigation itself does not constitute an adverse action.[4] *See Ginger v. District of Columbia*, 477 F. Supp. 2d 41, 53 (D.D.C. 2007); *Lipscomb v. Winter*, 577 F. Supp. 2d 258, 277 (D.D.C. 2008), *aff'd in part, remanded in part on other grounds*, No. 08-5452, 2009 WL 1153442 (D.C. Cir. Apr. 3, 2009). The Court separately considers below Plaintiff's claims that the period of administrative leave was associated with a loss of annual leave and performance bonuses.

---

[4] The decision of the D.C. Circuit Court of Appeals in *Velikonja v. Gonzales*, 466 F.3d 122 (D.C. Cir. 2006), is not to the contrary. In *Velikonja*, the Court of Appeals did not determine whether an investigation itself could constitute an adverse action. *Id.* at 124. The Court of Appeals simply determined that the complaint stated a claim for discrimination because it alleged that the plaintiff was referred for the investigation *in order to* prevent that person from receiving promotions. *Id.* There are no such allegations in the case before this Court.

With respect to Plaintiff's retaliation claim, the Court concludes that the investigation was not an adverse action for the same reasons that the administrative leave was not an adverse action: the investigation began prior to the alleged protected activity, and Plaintiff never claims that it was prolonged as retaliation for that protected activity.[5]

### 3.  Purported loss of annual leave

In the Complaint, Plaintiff claims that, as a result of Defendant's actions, he was "denied annual leave for FY 2010 and FY 2011 that he would have accrued and received." Compl. ¶ 94; *see also id.* ¶ 52 (same). In Plaintiff's Opposition, he admits that he did, in fact, accrue annual leave during his period of administrative leave. Pl.'s Opp'n at 12 n.6; *see also* 5 C.F.R. § 630.202(a) ("A full-time employee earns leave during each full biweekly pay period while in a pay status or in a combination of a pay status and a nonpay status."); Compl. ¶ 50 (Plaintiff placed in *paid* administrative leave). However, in his opposition, Plaintiff presents a new claim that he was unable to use all of his accumulated leave because he could only "roll over" a maximum of 240 hours of leave to the subsequent calendar year. Pl's Opp'n at 12 n.6. First, Plaintiff may not amend his Complaint through his Opposition to the Motion for Judgment on the Pleadings, and the Court need not consider any claims presented for the first time in his opposition. *See Kingman Park Civic Ass'n v. Gray*, 27 F. Supp. 3d 142, 168 (D.D.C. 2014). In any event, Plaintiff's purported inability to *use* all of his accrued leave does not constitute an adverse action. Plaintiff was paid his salary during the entire period of administrative leave, accrued leave during that period, was able to use it during the year accrued, and was able to "roll over" up to 240 hours for use in a subsequent year. In other words, his leave benefits were no

---

[5] The Court separately considers below the argument that the failure to dismiss the notice of proposed removal was an adverse action.

different during the period of paid administrative leave from a period of active status. In addition, it was immaterial whether he actually used his accrued leave (i.e., vacation) during the period of administrative leave because it would not make any difference to the pay or other benefits that he received. In sum, Plaintiff has not alleged any change to his leave-related benefits that qualifies as an adverse action under the discrimination or retaliation provisions of Title VII.

### 4.   Purported loss of performance bonuses

Plaintiff alleges that, as a result of the period of administrative leave, he "did not receive performance appraisals or bonuses for FY 2010 and FY 2011 which, in keeping with his immediately preceding performance appraisals as Director of ODEEO ADR, would have been at the level of Outstanding and carried with them performance bonuses." Compl. ¶ 52; *see also id.* ¶¶ 94, 101, 117. Defendant argues that the failure to have the opportunity to receive bonuses does not constitute an adverse action because the alleged harm was speculative.

As an initial matter, the Court notes that Plaintiff does not allege that the failure to pay bonuses was itself an adverse action that can serve as the basis for his discrimination claims or his retaliation claim. In order words, Plaintiff does not claim that he was denied a specific bonus as an act of discrimination or retaliation. Rather, Plaintiff claims that it was his placement on a period of administrative leave that *resulted* in him being unable to qualify for bonuses during the specified fiscal years. *Id.* ¶ 52. In that light, the Court concludes that the possibility of Plaintiff's being unable to receive bonuses was too speculative at the time Plaintiff was placed on administrative leave for it to constitute an adverse action. *See Porter v. Jackson*, 668 F. Supp. 2d 222, 232 (D.D.C. 2009) *aff'd*, 410 F. App'x 348 (D.C. Cir. 2010); *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (incorporating district court opinion in relevant part) (an agency action is not "an actionable adverse action ... unless there is a tangible change in the duties or

working conditions constituting a material employment disadvantage"). Moreover, the Court

notes that Plaintiff never alleges that he was placed on paid administrative leave or under

investigation *in order* to deprive him of the opportunity to receive bonuses. *Cf. Velikonja v.

Gonzales*, 466 F.3d 122, 124 (D.C. Cir. 2006) (complaint stated claim for discrimination where

plaintiff alleged that officials referred plaintiff for investigation "in order to prevent [the plaintiff]

from receiving promotions"). Finally, the Court notes that Plaintiff points to no cases where the

elimination of an opportunity to receive a bonus is an adverse action, let alone a case like this

where the elimination of an opportunity to receive a bonus is the downstream effect of an earlier

decision.

　　　With respect to the retaliation claim, the timing discussed above is also fatal to Plaintiff's

claim that the elimination of an opportunity to receive a bonus was an adverse action. As

discussed above, Plaintiff only relies on his placement on administrative leave as the basis for

that claim, yet that occurred prior to any of the alleged protected activities. Once again, Plaintiff

never claims that the period of leave was prolonged in order to eliminate the opportunity for

bonuses as retaliation in response to his earlier protected activities. *See* Compl. ¶¶ 52, 117. In

sum, as alleged, the loss of bonuses is not an adverse action under the discrimination or

retaliation provisions of Title VII.

### 5. Purported stigmatizing of Plaintiff, harm to his personal life, and loss of career advancement chances

Plaintiff alleges that Defendant "stigmatized plaintiff and caused great harm in his

personal life and to his professional reputation and ended any chance for career advancement."

Compl. ¶¶ 117. Defendant argues that these alleged actions satisfy neither the standard for an

adverse action under the discrimination provision of Title VII nor the standard under the

retaliation provision. The Court concludes that these conclusory allegations are insufficient under

the standard applicable to either provision. *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' "). With respect to the discrimination claims, Plaintiff has not sufficiently alleged tangible harm through his allegations. *See Baloch v. Kempthorne*, 550 F.3d 1191, 1199 (D.C. Cir. 2008). " '[P]urely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions." *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006) (citation omitted). Plaintiff has not alleged non-conclusory facts, through the allegations being considered here, to support a plausible conclusion that he has "experience[d] materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C. Cir. 2002). With respect to Plaintiff's retaliation claim, the Court also concludes that Plaintiff has not alleged here non-conclusory facts that plausibly support a claim that these actions "would 'dissuade[ ] a reasonable worker from making or supporting a charge of discrimination.' " *Bridgeforth*, 721 F.3d at 663 (citation omitted).

### 6.  Failure to dismiss the notice of proposed removal in 2011

Finally, Plaintiff alleges that Defendant, "in June of 2011, failed to dismiss the notice proposing to terminate plaintiff's employment and restore plaintiff to active duty in the position of Director of ADR in ODEEO." Compl. ¶ 94; *see also id.* ¶¶ 101, 117. Defendant argues that the failure to dismiss the notice prior to January 2012 does not constitute an adverse action.[6] The Court agrees with Defendant.

---

[6] The Court notes that Plaintiff never responds to Defendant's arguments regarding this purported adverse action. *See* Def.'s Reply at 17 n.7; *see* Pl.'s Opp'n at 25-27. While the Court

Plaintiff alleges that, no later than June 2011, the HUD decisionmaker at that time concluded that the charges against Plaintiff would not be sustained and that he would not be removed from federal service. *Id.* ¶ 69. However, Plaintiff was not returned to active duty as of that time. *Id.* ¶ 71. Only later did HUD issue a decision dated January 24, 2012, which rejected the proposal to terminate Plaintiff's employment at HUD and instead suspended him for five days and reassigned him. *Id.* ¶ 82. In short, Plaintiff's claim is that the failure to dismiss the notice in June 2011—rather than to wait until January 2012 to issue the decision to suspend and to reassign him and not to terminate him—is yet another adverse action. The Court disagrees. With respect to the retaliation claim, just as a notice of a proposed penalty is not an adverse action, all the more so the failure to dismiss a notice at a *particular time* is not an adverse action. Indeed, "[a] long line of cases from this Circuit and others have held that threats, revoked disciplinary plans, and other such ultimately unconsummated actions are not materially adverse for purposes of retaliation claims." *McNair v. D.C.*, 903 F. Supp. 2d 71, 75-76 (D.D.C. 2012) (citing cases); *see also Baloch v. Kempthorne,* 550 F.3d at 1199 (proposed suspension not material adverse action). So, too, with respect to the discrimination claim. Plaintiff has identified no tangible negative effects caused by the failure to dismiss the notice between June 2011 and January 2012. Therefore, the failure to dismiss a notice of proposed removal at the particular time desired by Plaintiff is not the sort of "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits," that qualifies as an adverse employment action. *Douglas,* 559 F.3d at 552.

---

could simply consider these arguments conceded, the Court considers Defendant's arguments on their merits.

*        *        *

In sum, the Court agrees with Defendant that none of the purported bases for Plaintiff's claims *other than* the five-day suspension and reassignment constitute adverse actions under the respective standards for discrimination and retaliation claims. The Court next briefly addresses Defendant's argument regarding the exhaustion of administrative remedies.

## B.  Administrative Exhaustion

Defendant's arguments with respect to exhaustion cover the same actions as the arguments regarding qualifying adverse actions. That is, Defendant argues that Plaintiff has not timely exhausted his administrative remedies with respect to any purported adverse actions other than the five-day suspension and reassignment. Defendant does not dispute that the claims with respect to the suspension and reassignment were properly exhausted. Because the Court concluded above that the only qualifying adverse action is the January 24, 2012, suspension and reassignment, the Court need not consider further the parties' arguments regarding the exhaustion of administrative remedies. The Court, therefore, proceeds to consider Defendant's final argument—that the Complaint fails to state a claim under which relief may be granted with respect to the five-day suspension and reassignment.

## C.  Failure to State a Claim

The Court now addresses Defendant's argument that, even with respect to the five-day suspension and subsequent reassignment, the Complaint fails to state a claim upon which relief may be granted. The Court turns first to the retaliation claim and then to the discrimination claims.

### 1.   Retaliation

As described above, "[t]o prove unlawful retaliation, a plaintiff must show: (1) that he opposed a practice made unlawful by Title VII; (2) that the employer took a materially adverse action against him; and (3) that the employer took the action 'because' the employee opposed the practice." *McGrath,* 666 F.3d at 1380. More specifically, a Title VII retaliation claims "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013). At this early stage of the litigation, the Court must consider the well-pleaded factual allegations in the complaint, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. While a plaintiff "is not required to plead every fact necessary to establish a *prima facie* case to survive a motion to dismiss," or a motion for judgment on the pleadings, the complaint must nonetheless meet the plausibility standard. *Jones v. Air Line Pilots Ass'n, Int'l*, 642 F.3d 1100, 1104 (D.C. Cir. 2011) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002)). Upon assessing the parties' arguments, the Court concludes that the complaint has not stated a plausible retaliation claim because of the timing of the events that culminated in the only qualifying adverse action in this case.

Because the sequence of events is critical to evaluating Plaintiff's retaliation claim, a review of those events is helpful:

- On June 16, 2010, Plaintiff was placed on paid administrative leave by Michelle Cottom, deputy director of ODEEO, and Cottom referred the case to HUD's Office of Inspector General for investigation. Compl. ¶¶ 42, 50-51.

- Through a written notice dated January 6, 2011, Cottom proposed to terminate Plaintiff's employment at HUD. *Id*. ¶ 55-56.

- On January 31, 2011, Plaintiff engaged in protected EEO activity through his written reply to the termination proposal. *Id.* ¶ 114.

- On March 29, 2011, Plaintiff again engaged in protected EEO activity in his first oral reply to termination proposal. *Id.* ¶ 115.

- On October 11, 2011, Plaintiff engaged in protected EEO activity in his second oral reply to the termination proposal. *Id.* ¶ 116.

- HUD issued the decision of Hoban-Moore, dated January 24, 2012, which rejected the proposal to terminate Plaintiff's employment and, instead, suspended him for five days and then reassigned him to another position. *Id.* ¶ 86.

In short, HUD initiated an investigation into Plaintiff's conduct, then proposed to terminate his employment, then Plaintiff engaged in protected activity, and ultimately HUD decided to impose a five-day suspension and reassignment. This sequence of events does not allow a plausible inference that retaliation for Plaintiff's protected activity was the but-for cause of the ultimate adverse action. Before Plaintiff engaged in the protected activity, the agency had already notified Plaintiff of its intent terminate his employment. *See id.* ¶¶ 55-56, 86. Indeed, it was that notice that led to the protected activity through which Plaintiff claimed that the proposed termination and the associated investigation were discriminatory. *See id.* ¶¶ 66, 73, 114-16.

With respect to the timeline, Plaintiff only states that the temporal proximity between his protected activity and the materially adverse action is evidence of retaliation. However, it appears that Plaintiff is only claiming temporal proximity between the decision to keep him on administrative leave and his protected activity. *See* Pl.'s Opp'n at 23. But the Court determined above that Plaintiff's placement on administrative leave itself does not constitute an adverse action. Nowhere does Plaintiff claim temporal proximity between his protected activity and the only qualifying adverse action—the January 24, 2012, decision to suspend Plaintiff for five days and to reassign him. Indeed, such a claim would fail because of the length of time that elapsed between the activity and the adverse action. Plaintiff's protected activity occurred on January 31,

2011; March 29, 2011; and October 11, 2011, but the sole qualifying adverse action did not occur until January 24 of the following year. No inference of causation is possible where it was more than three months between his final protected activity and the adverse action—and almost a year between Plaintiff's initial protected activity and the adverse action. *See Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) ("Temporal proximity can indeed support an inference of causation, but only where the two events are "very close" in time") (citations omitted); *Hamilton v. Geithner*, 666 F.3d at 1357-58 ("Although the Supreme Court has cited circuit decisions suggesting that in some instances a three-month period between the protected activity and the adverse employment action may, standing alone, be too lengthy to raise an inference of causation, neither the Supreme Court nor this court has established a bright-line three-month rule. Instead, we have evaluated the specific facts of each case to determine whether inferring causation is appropriate."). Notably, in the single case on which Plaintiff relies for his argument regarding temporal proximity, the protected action was only *two days* before the adverse action. *See Coleman v. D.C.*, 794 F.3d 49, 62 (D.C. Cir. 2015). This case is far different given the length of time between the protected activity and the adverse action—and given that the process that ultimately led to the termination began *before* the protected activity occurred. Therefore, the Court concludes that there is no temporal proximity in this case.

Indeed, not only does the sequence of events fail to show temporal proximity between the alleged protected activity and the alleged adverse action, that sequence of events makes any inference of causation implausible. As stated above, the notice of proposed removal and the associated period of investigation began prior to any protected activity by Plaintiff. After that period of administrative leave and investigation, the agency ultimately decided to impose a five-day suspension and to reassign Plaintiff to another position within the agency. Given this

sequence of events, it is simply implausible to conclude that retaliation for Plaintiff's protected

activity was the but-for cause of the ultimate adverse action.

Nor do Plaintiff's other arguments regarding causation undermine this conclusion. Insofar

as "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also

give rise to the inference" of causation, *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177

(3d Cir. 1997), Plaintiff has not adequately alleged such a sequence of events. Once again, it is

critical that the period of administrative leave and the investigation, which ultimately led to

Plaintiff's suspension and reassignment, began *before* the alleged protected activity. Plaintiff also

argues that an inference of causation is supported by his allegation that a representative of

HUD's human resources department provided him false information regarding retirement in an

attempt to coerce him to retire. *See* Pl.'s Opp'n (citing Compl. ¶¶ 75-81). While Plaintiff relies

on *Aka v. Washington Hosp. Center*, 156 F.3d 1284 (D.C. Cir. 1988), for this proposition, *Aka* is

readily distinguishable. In *Aka*, the D.C. Circuit Court of Appeals held that, if the evidence

allows an inference that an employer's explanation for the *adverse action* itself was a lie "that

should provide even stronger evidence of discrimination." *Id.* at 1293. In this case, however, the

information that Plaintiff alleges is false does not pertain to an explanation of the adverse action.

Moreover, Plaintiff maintains that this false information was provided by a human resources

specialist, not by the Hoban-Moore, the decisionmaker. Accordingly, the allegations regarding

the retirement information provided by human resources do not support an inference of

causation. Finally, the other cases on which Plaintiffs rely similarly do not speak to the issue at

hand, let alone suggest an inference of causation in these circumstances.[7] *See Morris v.*

---

[7] Plaintiff never explains his claim that HUD's actions were inconsistent with its general
procedures for handling such issues. Nor are allegations supporting this claim contained

*Washington Metro. Area Transit Auth.*, 702 F.2d 1037, 1046 (D.C. Cir. 1983) (resolving evidentiary question under no-longer applicable standard); *Lathram v. Snow*, 336 F.3d 1085, 1093 (D.C. Cir. 2003) (holding that "an unexplained inconsistency can justify an inference of discriminatory motive").

For all of these reasons, the Court concludes that Plaintiff has not plausibly alleged that retaliation for his protected activity was the but-for cause of his suspension and reassignment, and Plaintiff's retaliation claim must be dismissed even at this preliminary stage of these proceedings.[8]

### 2.   Discrimination Claims

The Court finally turns to Plaintiff's three discrimination claims—on the basis of race, on the basis of sex, and on the basis of race plus sex. Defendant argues that Plaintiff has not plausibly alleged a discrimination claim on any of these bases. Plaintiff responds that the allegations in the Complaint support plausible discrimination claims, citing to allegations about Michelle Cottom (on the basis of a "cat's paw" theory) and to other circumstantial allegations of discrimination. *See* Pl.'s Opp'n at 22-24 (citing Compl. ¶¶ 43-47, 57, 68, 75-81). The Court agrees with Plaintiff that the allegations are enough to clear the "relatively low hurdle" for

---

anywhere in the complaint. Plaintiff's statement in his *Opposition* that it was "irregular" to assign the disciplinary proceedings to three different officials in sequence—which it may or may not be—is not enough. Nor are the allegations in the Complaint that HUD did not immediately terminate the investigation after two different officials, in sequence, determined that they would not terminate Plaintiff's employment. Compl. ¶ 66, 74.

[8] The Court notes that it does not appear that Plaintiff is presenting a "cat's paw" argument with respect to his retaliation claim. *See* Pl's Opp'n at 21-24 (referring to Cottom's alleged discriminatory motives in the context of discrimination analysis). Nor does Plaintiff explain how *discriminatory* animus by Cottom could be transformed into a *retaliatory* adverse action by the ultimate agency decisionmaker—which would be necessary to prevail on the retaliation claim on that basis.

surviving a motion for judgment on the pleadings with respect to a discrimination claim. *Terveer v. Billington*, 34 F. Supp. 3d 100, 116 (D.D.C. 2014) (citing cases). Accordingly, the Court denies the motion for judgment on the pleadings with respect to the discrimination claims insofar as they are based on Plaintiff's five-day suspension and reassignment.

### IV. CONCLUSION and ORDER

For the foregoing reasons, it is hereby **ORDERED** that Defendant's [10] Motion for Judgment on the Pleadings is GRANTED IN PART and DENIED IN PART.

That motion is **GRANTED** with respect to the retaliation claim (count IV). With respect to the discrimination claims (counts I, II and III), the motion is **GRANTED** insofar as those claims are based on purported adverse actions *other than* the five-day suspension and reassignment and is **DENIED** insofar as it is based on the five-day suspension and reassignment.

As Defendant has already filed an Answer to the Complaint, the Court will set a date for an Initial Scheduling Conference by a separate Order.

Dated: February 29, 2016

                                        /s/
                                        COLLEEN KOLLAR-KOTELLY
                                        United States District Judge